In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 24-2017

ROBERT D. FERGUSON, *et al.*,

*Plaintiffs-Appellants.*

*v.*

AON RISK SERVICES COMPANIES, INC., *et al.*,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-07491 — **Mary M. Rowland**, *District Judge.*

_____

ARGUED NOVEMBER 3, 2025 — DECIDED AUGUST 13, 2026

_____

Before ST. EVE, JACKSON-AKIWUMI, and MALDONADO, *Circuit Judges.*

MALDONADO, *Circuit Judge.* Robert D. Ferguson, Kansa International Corporation, Ltd., Bankruptcy Estate, and Imipolex LLC (together, "Plaintiffs") are former shareholders of the parent company of Clarendon America Insurance Company and Clarendon National Insurance Company (collectively, "Clarendon"), a reinsurance provider. Defendants, insurance brokers Aon Risk Services Companies, Inc., Aon Risk

Services Central, Inc., and Aon Risk Services Southwest, Inc. (together, "Aon"), procured a professional liability insurance policy for Stirling Cooke Brown Holdings, Ltd. ("SCB"), another insurance broker, in the 1990s. After SCB's subsidiary, Raydon Underwriting Management Company, Ltd. ("Raydon"), advised Clarendon to participate in a poorly structured reinsurance program—exposing Clarendon to significant liability when that program imploded—Clarendon sought indemnification from Raydon, SCB, and SCB's professional liability insurers.

Plaintiffs acquired Clarendon's right to sue third parties responsible for Clarendon's reinsurance program-related losses. They now allege that Aon breached two purported contracts between SCB and Aon and committed professional negligence by failing to notify certain insurance carriers of claims that Clarendon made against Raydon. The district court dismissed the professional negligence claim and granted Aon summary judgment on the breach of contract claim. Because Clarendon was not a third-party beneficiary to either of the purported contracts, and because Aon owed no duty to Clarendon to notify SCB's carriers of Clarendon's claims, we affirm.

## I

Through its subsidiaries, SCB—a now-defunct Bermuda holding company—provided insurance brokerage services to insurance and reinsurance providers. Aon, one of the largest insurance brokerage firms in the world, assisted SCB in procuring a professional liability insurance program in the late 1990s (the "1997 Insurance Program"). Under the 1997 Insurance Program, Gulf Insurance Company ("Gulf") provided SCB with a primary layer of coverage of $15 million. Four

other carriers provided additional layers of coverage (the "Excess Carriers"). The policies contained notice provisions requiring SCB to provide the carriers with "written notice of any [ ] Claim as soon as practicable."

Raydon, one of SCB's subsidiaries, functioned as Clarendon's "outside program manager and agent," identifying and evaluating business opportunities and presenting those opportunities to Clarendon management. In 1993, Raydon advised Clarendon to participate in a reinsurance program in the London Market Personal Accident Excess of Loss Program, commonly known as "PA/LMX." On Raydon's advice, Clarendon participated in the PA/LMX program for the 1994 and 1995 years of account, but the program had major structural issues that ultimately caused Clarendon significant losses and deprived Clarendon of its reinsurance protections.

In 1999, as a result of the collapse of the PA/LMX program, the shareholders of Clarendon's parent company, including Plaintiffs here, sold Clarendon, and received rights to all claims against third parties who caused Clarendon's PA/LMX-related losses, including Raydon.

Shortly thereafter, other reinsurers involved in the PA/LMX program initiated arbitrations against Clarendon, alleging that Clarendon caused their program-related losses. Clarendon promptly notified Raydon of those arbitrations, seeking indemnification from Raydon, SCB, and SCB's insurance carriers. SCB transmitted some of Clarendon's claims to Aon, which, in turn, forwarded two of Clarendon's claims to Gulf, but, for unknown reasons, not to the Excess Carriers. Later, at Aon's prodding, SCB sent a document identifying pending claims against SCB to its carriers. There is no evidence in the record suggesting that SCB—which was, at that

point, on the verge of bankruptcy, *see In re AlphaStar Ins. Grp. Ltd.*, No. 03-bk-17903 (Bankr. S.D.N.Y. 2003)—took any further action to provide additional information to the carriers about Clarendon's claims.

In 2005, Plaintiffs began a lengthy legal campaign to recoup money for losses related to the PA/LMX program. First, they sued Raydon, but while they obtained a default judgment against Raydon in the Supreme Court of Bermuda, Plaintiffs were unable to recover because SCB (Raydon's parent company) had gone bankrupt. In 2011, Plaintiffs notified SCB's carriers of their judgment against Raydon, but the carriers denied coverage because of lack of proper notice. Ultimately, after mediation, Plaintiffs settled their claims with two of the carriers for less than SCB's policy limit.

Plaintiffs then sued Aon in Illinois state court, alleging professional negligence and breach of contract based on Aon's failure to report Clarendon's claims against Raydon to all of SCB's carriers. Specifically, Plaintiffs allege that Aon breached a purported "1996 Agreement" comprised of Aon's scope of work proposal, SCB's insurance application, and Aon's confirmation of SCB's insurance order, under which Aon allegedly promised to provide "day-to-day claim management" for SCB. Plaintiffs also alleged breach of a purported "1999 Agreement" consisting of Clarendon's letters to SCB, SCB's faxes to Aon, and Aon's faxes to Gulf, under

which Aon allegedly agreed to notify all of SCB's carriers of Clarendon's claims.

Aon removed Plaintiffs' complaint to the district court in the Northern District of Illinois.[1] The district court dismissed Plaintiffs' professional negligence claim, and later, granted summary judgment to Aon as to Plaintiffs' breach of contract claim. This appeal followed.

## II

While the parties dispute whether the purported 1996 and 1999 Agreements are valid and enforceable, we assume, without deciding, that they are. Our resolution of both the breach of contract and professional negligence claims therefore hinges on a determination of what duty—if any—Aon owed to Clarendon. We conclude that Clarendon was not a third-party beneficiary of the 1996 or 1999 Agreements between Aon and SCB and that Aon owed Clarendon no duty to notify SCB's carriers of Clarendon's claims.

### A. Clarendon Was Not a Third-Party Beneficiary of the 1996 and 1999 Agreements

First, we address Clarendon's appeal from the grant of summary judgment to Aon on its breach of contract claims.

---

[1] For the purposes of diversity jurisdiction, we find Kansa to be a Finnish corporation under 28 U.S.C. § 1332(c)(1), and thus, a citizen of Finland. Kansa "has the attributes of a 'corporation' as understood in the law of the United States," namely, "perpetual existence with a legal personality distinct from that of investors, shares that are tradeable (in principle, at least), and limited liability." *Starstone Ins. SE v. City of Chicago*, 133 F.4th 764, 767 (7th Cir. 2025); *see* Finnish Companies Act, 624/2006 pt. 1, ch. 1 § 2(1) (legal personality distinct from that of investors); ch. 1 § 4 (shares are tradeable); ch. 1 § 2(2) (limited liability).

We review the district court's grant of summary judgment *de novo*. *Legend's Creek Homeowners Ass'n, Inc. v. Travelers Indem. Co. of Am.*, 33 F.4th 932, 934 (7th Cir. 2022). "Summary judgment is appropriate when there is no dispute of material fact, and the moving party is entitled to judgment as a matter of law." *Id.*

As a third party to the 1996 and 1999 Agreements, Clarendon could recover only if the "contract [was] undertaken for [Clarendon's] direct benefit and the contract itself . . . affirmatively make[s] this intention clear." *Caswell v. Zoya Int'l, Inc.*, 654 N.E.2d 552, 554 (Ill. App. Ct. 1995) (quoting *Barney v. Unity Paving, Inc.*, 639 N.E.2d 592, 596 (Ill. App. Ct. 1994)); *see also Barney*, 639 N.E.2d at 596 (quoting *Ball Corp. v. Bohlin Bldg. Corp.*, 543 N.E.2d 106, 107 (Ill. App. Ct. 1989)) ("If the intent to benefit others is not explicitly provided for in the contract, its implication at least 'must be so strong as to be practically an express declaration.'").

Clarendon has no right of recovery on the 1996 and 1999 Agreements if they confer merely an incidental benefit on Clarendon. *See Barney*, 639 N.E.2d at 596 (quoting *Waterford Condo. Ass'n v. Dunbar Corp.*, 432 N.E.2d 1009, 1011 (Ill. App. Ct. 1982)) ("The fact that the contracting parties may 'know, expect, or *even intend* that others will benefit' from their agreement is not enough to overcome the presumption that the contract was intended solely for the *direct* benefit of the parties.") (emphasis in original); *see also Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 924 (Ill. App. Ct. 2009) ("It must appear from the language of the contract that the

contract was made for the direct, not merely incidental, benefit of the third person.").

Here, two of the three documents comprising the 1996 Agreement—Aon's scope of work proposal and the insurance order confirmations—make no mention of Clarendon, let alone provide explicitly that they were undertaken for Clarendon's benefit. *See Martis*, 905 N.E.2d at 924 ("If a contract makes no mention of the plaintiff or the class to which he belongs, he is not a third-party beneficiary of the contract."). The third document, SCB's insurance application, does mention Clarendon obliquely as an "admitted insurance carrier[] [with which SCB] place[s] standard business," and as a "non-admitted and non-standard carrier[] . . . [with which SCB] place[s] standard business." But "the mere reference to a party in a contract will not confer third-party beneficiary status." *See Carlson v. Rehab. Inst. of Chi.*, 50 N.E.3d 1250, 1256 (Ill. App. Ct. 2016). It makes no difference whether SCB or Aon knew or expected that Clarendon would benefit from the 1996 Agreement "[i]f the intent to benefit [Clarendon] [wa]s not explicitly provided for in the contract." *Barney*, 639 N.E.2d at 596. "In the absence of an express provision," *see Carlson*, 50 N.E.3d at 1256, we find that Aon and SCB did not intend to confer a direct benefit to Clarendon under the 1996 Agreement.

The four chains of correspondence comprising the 1999 Agreement also fail to reflect the explicit intent of either Aon or SCB to confer a direct benefit onto Clarendon. As a threshold matter, no evidence in the record supports Plaintiffs' contention that two of those chains—beginning with letters Clarendon sent on September 30, 1999, and October 13, 1999—ever reached Aon. The other two chains—beginning with letters Clarendon sent on August 11, 1999, and September 28,

1999—suggest that if there was an agreement between Aon and SCB, it was rooted in Aon's promise to notify SCB's carriers of Clarendon's claim against Raydon, as was required under the notice provisions of SCB's agreements with those carriers. Those chains of correspondence do not, however, suggest that SCB and Aon agreed to make professional liability coverage available to pay Clarendon in the event that Raydon was deemed responsible for Clarendon's losses in the arbitrations.

In fact, SCB's faxes forwarding Clarendon's letters to Aon mention only Clarendon's request for a standstill agreement and express no specific interest in acceding to that request or any of the others made in Clarendon's letters, such as, "indemnifying Clarendon for the costs of" a settlement with the PA/LMX reinsurers. And when Aon faxed those letters to Gulf, Aon made no mention of Clarendon, instead stating, "[p]lease see the attached to keep you up to date under [SCB's professional liability insurance] policy." That is, by agreeing to notify SCB's carriers of Clarendon's claims, Aon was not ensuring that Clarendon could be reimbursed for its settlements with the PA/LMX reinsurers. Instead, Aon was ensuring that SCB provided prompt claim notification to its carriers so that *SCB*, not necessarily Clarendon, could be properly covered. *See Barney*, 639 N.E.2d at 596 ("[I]n Illinois, there is a strong presumption that the parties to a contract intend that the contract's provisions apply only to them, and not to third parties.").

Even if Aon and SCB knew that Clarendon might benefit from the 1999 Agreement, "the intent to benefit [Clarendon] is not explicitly provided for in [the 1999 Agreement]," nor "impli[ed] . . . 'so strong[ly] as to be practically an express

declaration.'" *Id.* (quoting *Ball*, 543 N.E.2d at 107). The 1999 Agreement between SCB and Aon "contains no language indicating that the parties intended to benefit" Clarendon. *Carlson*, 50 N.E.3d at 1256. Accordingly, Clarendon "has no right of recovery thereon." *Barney*, 639 N.E.2d at 596 (quoting *Carson Pirie Scott & Co. v. Parrett*, 178 N.E. 498, 501 (Ill. 1931)).

Last, a word on Plaintiffs' argument about the "duty owed" test, as outlined in *Robson v. Robson*, 514 F. Supp. 99 (N.D. Ill. 1981), and the Restatement (Second) of Contracts § 302 cmt. d. Plaintiffs contend that under the "duty owed" test, "[n]othing more is needed to make Plaintiffs third-party beneficiaries" of the 1996 and 1999 Agreements than Raydon's agreement "to notify its insurers of Clarendon's 1999 claim," and Aon "in turn committ[ing] to handle notice for Raydon." *Robson* and the Restatement are inapposite, however, as both assume third-party beneficiary status as a starting point and discuss the "duty owed" test only to tease out distinctions and similarities between different types of third-party beneficiaries. *See Robson*, 514 F. Supp. at 103 (distinguishing the rights of donee and creditor beneficiaries); Restatement (Second) of Contracts § 302 cmt. d (both creditor and donee beneficiary contracts involve sufficient manifestation of intent to make reliance by the beneficiary "reasonable and probable."). But here, Clarendon's purported third-party beneficiary status is disputed, so rather than determining Clarendon's type of beneficiary status (*e.g.*, donee or creditor), we must determine, as we have above, whether Clarendon was a third-party beneficiary at all. The "duty owed" test is irrelevant.

Because Clarendon had no legal interest in the terms of the 1996 or 1999 Agreements, Clarendon's breach of contract

claim fails as a matter of law, and the district court properly granted summary judgment to Aon on that claim.

## B. Aon Owed Clarendon No Professional Duty to Deliver Notice of Clarendon's Claims

We next address Plaintiffs' challenge to the district court's order dismissing their professional negligence claim under Rule 12(b)(6). We review the dismissal *de novo*, accepting the facts stated in the complaint as true and drawing reasonable inferences in Plaintiffs' favor. *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In Illinois, "[a] cause of action based on professional negligence requires the following elements: '(1) the existence of a professional relationship, (2) a breach of duty arising from that relationship, (3) causation, and (4) damages.'" *SK Partners I, LP v. Metro Consultants, Inc.*, 944 N.E.2d 414, 416 (Ill. App. Ct. 2011) (quoting *MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC*, 845 N.E.2d 22, 30 (Ill. App. Ct. 2006)). Even assuming "the existence of a professional relationship," Plaintiffs falter at the second element.

Plaintiffs fail to identify any case where an Illinois court has held that an insurance broker owed a duty to a non-insured third party to notify an insured's carriers of claims made by the non-insured third party against the insured. And no wonder. As we explained in *M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, "Illinois courts have not viewed the duty of insurance brokers so

expansively"; an insurance broker's duties are typically owed to the insured, not the "similarly situated non-insured." 845 F.3d 313, 322 (7th Cir. 2017). So "[e]ven if [an insurance broker] had a duty to the 'insured,'" a non-insured "could not sustain a claim regarding the [relevant] policy because [it] was not the insured on that policy." *Id.* at 321. And at least one Illinois court has held, in a case involving Aon, that insurance brokers do not "have a duty to protect third parties from foreseeable harm flowing from the conduct of their clients." *See Santa Rosa Mall, LLC v. Aon Risk Servs. Cent., Inc.*, 227 N.E.3d 649, 659–61 (Ill. App. Ct. 2023) (dismissing shopping mall's professional negligence claims against Aon based on an insurance policy Aon procured for a mall tenant because (1) "Aon itself was not a party to that contract of insurance, and thus," there was no "duty flowing from Aon to the mall," and (2) the mall "ha[d] not alleged any failure by Aon of its duties *as an insurance broker*," and instead, "the entirety of the complaint [wa]s about what Aon failed to do . . . after claims were made under the policy").

Plaintiffs' claim that Aon owed Clarendon a duty to provide notice to SCB's insurers about Clarendon's claims against Raydon therefore fails. Aon owed a duty only to *SCB* to "act[] in good faith and with reasonable care, skill, and diligence to place the insurance in compliance with [SCB's] instructions." *Econ. Fire & Cas. Co. v. Bassett*, 525 N.E.2d 539, 543 (Ill App. Ct. 1988); *see also Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, 933 F.3d 806, 816 (7th Cir. 2019) (holding that under Illinois law, "negligence liability . . . attaches only if a broker had a duty to perform the action it allegedly performed negligently," and identifying "no Illinois cases establishing

that insurance brokers have a duty to deliver notice of claims on behalf of an insured," let alone a non-insured third-party).

Because Plaintiffs failed to state a plausible claim for professional negligence, the district court properly dismissed that claim.

### C. Plaintiffs' Claims Are Time-Barred

Even if Plaintiffs' breach of contract and professional negligence claims were viable, they would be time-barred. Under Illinois law, there is a two-year statute of limitations for "[a]ll causes of action brought by any person or entity under any statute or any legal or equitable theory against an insurance producer . . . concerning the sale, placement, procurement, renewal, cancellation of, or failure to procure any policy of insurance." 735 ILCS 5/13-214.4.

A claim for breach of contract "accrues at the time of the breach of contract, not when a party sustains damages." *Ind. Ins. Co. v. Machon & Machon, Inc.*, 753 N.E.2d 442, 445 (Ill. App. Ct. 2001). A third-party beneficiary's "cause of action accrue[s] when [the contractual party's] similar cause of action accrue[s]." *Draper v. Frontier Ins. Co.*, 638 N.E.2d 1176, 1180 (Ill. App. Ct. 1994). And a cause of action based on a theory of negligence "is said to accrue when the plaintiff knows or reasonably should know that he has been injured by the wrongful conduct of another." *Nakamura v. BRG Sports, LLC*, 144 N.E.3d 610, 614 (Ill. App. Ct. 2019).

Here, Aon purportedly breached the 1996 and 1999 Agreements in 1999 when it failed to report Clarendon's claims against Raydon to SCB's carriers. Even applying the discovery rule, which tolls the statute of limitations until a "plaintiff knew, or in the exercise of reasonable diligence should have

known," that his injury was wrongfully caused, *Newell v. Newell*, 942 N.E.2d 776, 781 (Ill. App. Ct. 2011), the record reflects that Plaintiffs were at least on inquiry notice as to Aon's purported breach as early as 2012. That's when Ferguson wrote to Aon requesting information as to whether Aon had given notice of Clarendon's claims to SCB's carriers. Thus, Plaintiffs' claims, filed for the first time in 2019, are time-barred.

Accordingly, we AFFIRM the judgment of the district court.